FILED
04 AUG -3 PM 2: 05
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

GINGER A. McDILL, )
 )
    Plaintiff, )
 )
v. ) Civil Action No.: 03-PT-0737-E
 )
THOMAS E. WHITE, Secretary, )
Department of Defense, )
 ) ENTERED
    Defendant. ) AUG 03 2004

## MEMORANDUM OPINION

This cause comes on to be heard upon R.L. Brownlee ("Brownlee"), Acting Secretary of the Army's, Motion for Partial Summary Judgment, filed on June 1, 2004.[1]

### FACTS AND PROCEDURAL HISTORY

McDill began working at Fort McClellan in the Central Accounting Office in December 1987. Fort McClellan was first identified for closure in 1995 pursuant to the Base Realignment and Closure Program ("BRAC").

When the Central Accounting Office closed, Ms. Gilbert, the Fort McClellan Housing Manager, agreed to take McDill as well as another worker, Fiona Gatten ("Gatten"), into her organization. In April 1997, Gilbert accepted McDill as an Accounting Technician, NF-525-03, in the Housing Division of the U.S. Army Garrison at Fort McClellan. McDill physically worked at the Fort McClellan Welcome Center from April 1997 through July 1998. After July 1998, McDill worked in Building 939 of the Billeting Office.

McDill was responsible for processing the accounts receivable and the Daily Activity Report.

---

[1] The court notes where facts appear to be disputed. To the extent plaintiff does not address the facts provided by defendant and vice versa, the court deems those facts undisputed.



McDill did not perform these duties after August 1998, because she took an extended leave of absence in late July 1998. At that time, her accounts receivable duties were assigned to Jimmy Pittman. Gilbert's declaration stated:

> In the months preceding the abolition of McDill's position, the Billeting Office had stopped billeting large groups for the classes that were traditionally held at Fort McClellan. This reduction in classes resulted in a corresponding reduction in accounts receivable that would need to be processed. By late 1998, our accounts receivable were down tremendously, almost to nothing. During this time, Ms. McDill was in extended absence and we were informed that she would be out indefinitely. Even if Ms. McDill had been able to return to work by 1999, the lack of accounts receivable to process would have justified abolishing Ms. McDill's position. There simply was not enough work to justify Ms. McDill's position as a result of the impending base closure.

McDill initiated contact with the EEO office on September 14, 1998.[2] On December 8, 1998, McDill filed a formal EEO complaint alleging a hostile work environment based on sex.

In February 1999, McDill was notified that her employment would be terminated effective April 19, 1999, pursuant to a reduction in force (RIF) accompanying the closure of Fort McClellan. On March 15, 1999, McDill's notice of termination was canceled by a separate memorandum. On March 15, 1999, a second notice of termination was issued with the same effective date as the first notice of termination, i.e., April 19, 1999.

Pursuant to Army Regulation 215-3, defendant alleges, the agency was only required to give McDill 30-days' notice of her proposed termination because it was a business-based action. The previous 60-days' notice, defendant asserts, was intended to give employees more notice than required by agency regulations, in order to aid those employees in finding other employment.

---

[2] The court's "findings" at this stage are certainly not binding on anyone. At the recorded conference on July 27, 2004, the plaintiff stated that the informal complaint was made in June 1998 and the formal complaint in September 1998.

2

On April 5, 1999, McDill initiated contact on a second EEO complaint, alleging that her termination was in retaliation for filing her earlier EEO complaint. McDill filed her second formal EEO Complaint on June 30, 1999.

On April 3, 2003, McDill filed a judicial complaint against Thomas E. White ("White"), Secretary, Department of Defense alleging sexual discrimination and sexual harassment in violation of Title VII.[3] In her complaint, plaintiff claimed that defendant maintained a policy, practice, custom or usage of:

- Discriminating against plaintiff because she is a female with respect to the terms, conditions, and privileges of her employment;
- Limiting and otherwise creating an environment of psychological harassment, sexual harassment, and professional segregation in ways which damaged her personal and professional status and otherwise affected her status as an employee of defendant because of her sex;
- Harassing her sexually and otherwise; doing injury to her person and professional reputation;
- Demotion and termination of employment in retaliation for the filing of grievance with respect to the disparate treatment perpetuated by defendant; and
- Depriving plaintiff of employment rights in violation of due process of law guaranteed by the Fifth Amendment to the United States Constitution.

Specifically, McDill's complaint alleged that actions taken against her by Mr. Jerry Hinkle ("Hinkle") and Ms. Claudette Gilbert ("Gilbert") were "because she was a female and such acts constituted a hostile work environment due to such sex based discrimination." Plaintiff alleged that she was terminated "due to reprisal for her previous discrimination case and her workers'

---

[3] At the time McDill filed her complaint, White was not Secretary of DOD; he was Secretary of the Army. The court granted McDill's motion to amend the complaint to substitute the Department of the Army for the Department of Defense. On May 10, 2003, R. L. Brownlee ("Brownlee") became the Acting Secretary of the Army. Brownlee answered the complaint on behalf of the Department of the Army on December 5, 2003. *See infra* for more detail.

3

compensation claim." Further, plaintiff alleged, "she was subjected to severe and pervasive harassing conduct such that it altered the conditions of her employment and that it would not have occurred except for her membership in that protected group."[4] Plaintiff requested that this court do the following: declare that the acts of the Department of the Army as well as Gilbert and Hinkle constituted sex discrimination and sexual harassment in violation of Title VII; direct the Department to "review and reconstruct" plaintiff's personnel records to reflect promotions and salaries plaintiff would have received but for defendant's illegality; and award damages for "all discriminatory and negligent acts," including back pay, fringe benefits, future pay and advancement, damages for emotional distress, pre-judgment and post-judgment interest, punitive damages, and reasonable attorneys' fees and costs.

On October 20, 2003, DOD moved to dismiss pursuant to Rules 12(b)(1)(lack of subject matter jurisdiction), 12(b)(5)(insufficiency of service of process), 12(b)(6)(failure to state a claim),

---

[4] Specific allegations in the complaint include the following:

- In April 1997, Mr. Hinkle was moody and stomped around cursing, slamming things, and yelling obscenities to the employees, thereby embarrassing and humiliating McDill in front of customers and fellow employees.
- On an unspecified occasion, Mr. Hinkle allegedly insisted that she look at a sign on his computer which stated: "The toes you step on today might be connected to the ass you have to kiss tomorrow."
- On June 2, 1998, Mr. Hinkle asked if she was going to vote, and when she answered "yes," he screamed that she didn't know what it's about. He wanted to know who she was going to vote for.
- On April 30, 1998, plaintiff called to inform Mr. Hinkle and Ms. Gilbert that she might be a few minutes late, leaving a message because they were not available. Hinkle later allegedly commented: "I don't care who died, or what your reasons are, you are to call and talk directly to me."
- On July 17, 1998, Gilbert allegedly made humiliating and embarrassing comments about her facial acne;
- On March 10, 1998, when she was using Mr. Hinkle's computer to secure a receipt for a customer, he told her "he did not give a damn, just get your ass up."
- McDill's position was abolished with a 60-day notice due to her filing of the first complaint of December 8, 1998 as well as a claim for workers' compensation.
- Because plaintiff complained about Mr. Hinkle's treatment of her, he was made her supervisor.

and 12(b)(7)(failure to join a party under Rule 19). On November 4, 2003, McDill filed motions to amend the style of the case to properly identify Thomas White as Secretary of the Army and to amend the complaint by substituting the word "army" for "defense."[5] The court granted both motions to amend on November 7, 2003. On November 20, 2003, this court denied defendant's motion to dismiss, without prejudice.

## STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer*

---

[5] As a result, this court reiterates, the Department of Army was substituted for the Department of Defense. Also, as noted earlier, Brownlee was substituted for White.

*v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. Comer, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

### I. Defendant's Motion

#### A. Introduction

Defendant moves for partial summary judgment as to McDill's claim that the Army retaliated against her for engaging in protected EEOC activity by abolishing her position without sixty-days notice.[6] According to defendant, McDill cannot establish a prima facie case of retaliation with regard to abolishment of her position because: (1) plaintiff suffered no adverse personnel action; (2) plaintiff cannot establish a causal connection between her protected activity and her alleged adverse personnel action; and (3) plaintiff cannot rebut defendant's legitimate, nondiscriminatory reasons for the agency's actions.

Because plaintiff has offered only circumstantial evidence of discrimination, Brownlee contends, the *McDonnell-Douglas* burden-shifting framework applies. To establish a *prima*

---

[6] Defendant's motion for summary judgment appears limited to the retaliation claim(s) and doe not appear to address plaintiff's Title VII hostile environment claim or any other claim plaintiff may be making.

*facie* case of retaliation, Brownlee argues, plaintiff must show: (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action. *See Gupta v. Florida Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000). After plaintiff establishes a prima facie case, defendant bears the burden of articulating a legitimate, nondiscriminatory reason for the disputed action. *See Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Defendant points out that its burden in this regard is exceedingly light. *Id.* Then, defendant argues, plaintiff must present "significantly probative" evidence of pretext. *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1469 (11th Cir. 1991). Plaintiff can prove pretext, defendant concedes, by showing defendant's reason is "unworthy of credence or by showing that [retaliation] more than likely motivated [defendant]." *Id.*

> **B.     McDill Cannot Establish a Prima Facie Case of Retaliation Because She Cannot Show An Adverse Personnel Action or a Causal Connection Between Her Protected Activity and Her Alleged Adverse Personnel Actions.**

First, defendant asserts, the complaint does not clarify whether McDill is alleging that adverse action is her termination or the fact that her termination was done without giving sixty-days notice. According to Brownlee, summary judgment is warranted either way.

Regarding inadequate notice of termination, defendant asserts, that administrative action would not constitute an actionable adverse employment action under Title VII. Proof of an adverse personnel action is required. *See Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). As expressed in *Davis v. Town of Lake Park, Florida*, 245 F.3d 1232, 1238 (11th Cir. 2001), a plaintiff must show a serious and material change in the terms, conditions, or privileges of employment. While proof of economic consequences is not required, Brownlee argues, the asserted impact must be more than speculative. *Id.* The adverse action requirement applies similarly to Title VII anti-

7

discrimination and retaliation claims. *See Davis, supra* ("It [the adverse action requirement] has been imposed in cases under Title VII's retaliation clause, even though that provision is not limited to unlawful conduct with respect to the 'terms, conditions, or privileges of employment.'"); *see also Gupta, supra*.[7]

Defendant highlights the Eleventh Circuit's objective test to determine whether an employee has suffered an adverse personnel action. *See Doe v. DeKalb County School Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998)("A plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse.")[8] As *Doe* indicates, an action is not adverse merely because an employee dislikes or disagrees with it, otherwise "every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Id.* at 1449 (citation omitted).

---

[7] In *Gupta*, this court notes, the adverse action requirement in a retaliation context was described as follows:

> Gupta alleges that she suffered numerous adverse employment actions. An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that "alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her of employment opportunities, or adversely affects his or her status as an employee." *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300 (3rd Cir.1997) (citation and internal marks omitted). Conduct that falls short of an ultimate employment decision must meet "some threshold level of substantiality ... to be cognizable under the anti-retaliation clause." *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir.1998). In evaluating what actions meet that required level of substantiality, we recognize that "Title VII[ ] is neither a 'general civility code' nor a statute making actionable the 'ordinary tribulations of the workplace.'" *Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir.1999) (citation omitted). Whether an action is sufficient to constitute an adverse employment action for purposes of a retaliation claim must be determined on a case-by-case basis, *id.* at 1178, using both a subjective and an objective standard, *see Doe v. Dekalb County School Dist.*, 145 F.3d 1441, 1448-49 (11th Cir.1998) (recognizing that the subjective requirement is virtually almost always satisfied and imposing an objective requirement, as well).

[8] *Doe* is an ADA case.

In the instant case, defendant asserts, evidence of an adverse employment action does not exist. Defendant emphasizes the fact that the effective date of termination – April 19, 1999-- remained the same in both Notices of Business Based Action. According to Brownlee, whether McDill had 30 days' or 60 days' notice of pending termination is not such an adverse action, since McDill cannot show that she experienced a significant change in benefits.

Even if McDill presents the termination itself as the adverse action, Brownlee asserts, she cannot show the requisite causal link between her protected activity and any alleged adverse action. Defendant reiterates that McDill's protected activity took place in September 1998 (when she first initiated contact with the EEO on her discrimination claim),[9] and McDill was terminated without allegedly getting a 60-days' notice on April 19, 1999. Thus, Brownlee contends, six months separate the protected activity and alleged personnel action.[10]

Defendant lists a number of cases in which federal courts found too great of a time lapse (ranging from a year to three months) between the protected activity and the termination to support an inference of causation. *See, e.g., Breech v. Alabama Power Co.*, 962 F. Supp. 1447, 1461 (S.D. Ala. 1997)(more than a year); *Balletti v. Sun-Sentinel Co.*, 909 F. Supp. 1539, 1549 (S.D. Fla. 1995)(six months); *Reeves v. Digital Equip. Corp.*, 710 F. Supp. 675, 677 (N.D. Ohio 1989)(approximately three months).

### C. The Army had Legitimate, Non-retaliatory Reasons for Abolishing McDill's Position Without 60 Days Notice

---

[9] However, this court notes, a Notice of Right to File a Discrimination Complaint was not issued until November 25, 1998, and McDill apparently filed her first formal EEO complaint on December 8, 1998.

[10] In fact, defendant alleges, even if the court calculates the alleged adverse action from March 15, 1999 -- the date the termination notice was canceled and re-issued -- five months elapsed between plaintiff's protected activity and the termination.

Finally, defendant contends, the reason for terminating McDill was a purely business-based decision, i.e., Fort McClellan's closure. Defendant recites the allegations in Gilbert's Declaration, *see supra*.

Defendant also deems plaintiff's evidence of pretext inadequate, relying on Army Regulation 215-3 which requires only 30 days' notice of termination for a business-based decision. *See supra*. Defendant also repeats facts recited earlier regarding the cancellation and reissuance of a second Notice of Business Based Action.

## CONCLUSION OF COURT

At a recorded conference on July 27, 2004, the plaintiff acknowledged that her retaliation claims are due to be dismissed. That claim will be dismissed.

This the 3rd day of August, 2004.

ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**